*472
 
 Gaston, Judge,
 

 after stating the case as above, pro-
 

 ceeded as follows. — We deem it unnecessary to enter upon inquiry, whether if there has been the submission charged in the bill, the award thereupon does not furnish a legal defence against the action enjoined. Nor shall we examine w'hether it may not be open for the plaintiff to show by
 
 extrinsic
 
 evidence, that in truth such a submission was made; or for the defendants, on the other hand, to prove that théir testator signed the petition under a misconception of its import. In the present state of the conflicting allegations of the parties, and for the purpose of deciding on the question before us, we have confined our attention to the construction of the written documents exhibited. The petition is addressed to the' judge of the Superior Court of law and equity for the county of Meck-lenburg. It states that the executor of William J. Wilson and the creditors petition his Honor to appoint the clerk of the Court, together with William J. Alexander and Washington Morrison, Esquires, to adjust and finally settle with J. M'Knitt Alexander, the executor, the estate o,f William J. Wilson, and place the same on the records of the Court; and it purports to be signed by the executor, and by several persons as creditors, among w'hom is the testator of the defendants. The order thereupon is, that Pearsall Thompson, William J. Alexander and Washington Morrison, Esqrs. be appointed a committee, to adjust and finally settle the estate of William J. Wilson, deceased, with J. M‘Knitt Alexander, the executor. The petition is dated July, 1834, and the order is made at August term, 1834. The award bears date February 17th, 1835. It prefixes a statement of the unsatisfied demands against the estate, which is headed “ Report of the estate of William J. Wilson by the executor;” two lists of debts paid by the executor, and a statement showing
 
 “
 
 amount of William J. Wilson’s estate,” and then proceeds to declare, that the said Alexander, Morrison and Thompson, being appointed by the Superior Court of law, by and with the advice and consent of the executor of William J. Wilson, on the one part, and of the creditors set forth in the preceding statement, on the other, to settle the estate of said
 
 *473
 
 Wilson, and “ decide to whom and in what manner the assets of said estate should be paid,” do award that the executor having paid the amount of debts as set forth in the two lists above-mentioned, do pay .those contained in the first statement
 
 pro rata
 
 out of the assets, there being a deficiency to pay all the bond debts and others of equal dignity: that the executor be allowed four per cent, commissions ; and that Margaret Wilson, (one of the petitioning creditors paid in full,) pay the executor one hundred dollars in addition
 
 to
 
 the commissions above allowed. There is then subjoined or endorsed, a'géneral statement representing the amount of the estate, the balance after deduction of commissions and debts subject to no deduction; the amount of debts subject to deduction ; and the excess of these above the balance of assets; showing that the executor will be enabled to pay fifty-three cents in the dollar. It does not appear when the proceedings of the committee or arbitrators were returned to Court, but that they were returned, would appear from the copy thereof certified by the clerk of the Court. There was no action thereon by the Court. The testator of the defendants died 11th April, 1835.
 

 Executors and administrators are required by law to make a settlement of their estates with the County Court, which is authorized to make to them an allowance by way of commissions on the amount of receipts and expenditures, that shall appear to be fairly made in the management of the estates. It is the universal usage to.make this settlement through the agency
 
 of
 
 a
 
 committee
 
 appointed by the County Court, which committee also reports to the Court a reasonable rate of commissions. Such settlements, however, are regarded as
 
 ex parte
 
 settlements, and in no respect binding the creditors, legatees or next of kin, except as to the allowance of commissions when sanctioned by the Court. The Superior Courts have no original jurisdiction over these settlements or the allowance of commissions; nor have any of our Courts authority to direct a submission to arbitration to be made a rule of Court, unless when the parties agree to a reference of some subject of litigation actually pending before them. To a proceeding so
 
 *474
 
 anomalous as that which we aro examining, it is difficult to assign a precise character. It has no
 
 force
 
 as a judicial Proceeding — and is binding on the parties only to the extent to which the parties have declared their will to be thereby bound. From the concurrency of the creditors with the executors in the appointment of the persons to superintend or make the settlement between him and the estate, it may be inferred that the parties intended to impart to such a settlement a character above that of the mere
 
 ex parte
 
 settlements usually made by executors and .administrators. This inference is strengthened by the introduction of the unusual expression, “ finally,” in the .application for the appointment — “to adjust and
 
 finally
 
 •settle.” But whatever was to be the
 
 character of the
 
 settlement, whether conclusive,
 
 ex parte,
 
 or intermediate between these extremes, the main inquiry is, what was the subject-matter of it
 
 1
 
 The petition and the order thereon, show that this was “ the estate of the deceased with the executorand such a settlement involves directly no-more than an inquiry into his receipts and disbursements and the reasonable rate of commissions to be thereon allowed. • Before we can hold that the rights of the creditors as against the executor, or as to priority as between themselves, were conclusively adjudicated by an award, it must clearly appear, that the creditors submitted these subjects to adjudication. Had a submission of these rights been intended, we cannot but think, that the language of the petition and order would have been more explicit. The persons nominated to act, would have been characterized not as a
 
 committee,
 
 but as referees or arbitrators ; the subject-matter of the reference would have embraced, in terms, not merely a settlement of the estate with -the ■ executor, but in the language of the bill and the award, have set forth the questions arising between the creditors, “ to ■whom and in what manner-the assets of said estate should, be paidand the result of the reference have been designated, not as a settlement of the estate to be returned to Court, but by its well-known name of an award to be binding upon the parties. It would be dangerous to .imply a delegation of authority, not resulting from obvious
 
 *475
 
 intendment, to a tribunal raised by the parties, so as to deprive them of the power of resorting to the tribunals constituted by the law for the ascertainment of rights and the decision of controversies. Upon this view of the case, we are of opinion, that for the present, and upon the face of the exhibits, the award, as it has been termed, cannot be considered as binding the defendants to forego their claim to the unpaid residue of the bonds, for which they have brought suit.
 

 On the trial of the suit, what effect shall be given as evidence to the accounts accompanying the report of the committee, is a question on which it were improper now to express any opinion.
 

 The Court directs, that this their opinion shall be certified to the Court of Equity for the county of Mecklenburg, with instructions to reverse the order appealed from, and to order that the injunction heretofore granted in this case, be dissolved with costs. The plaintiff must pay the costs of this Court.
 

 Per Curiam. Order reversed.